TODD KIM
Assistant Attorney General
U.S. Department of Justice
SYDNEY MENEES (D.C. Bar # 1027544)
Trial Attorney
Environment and Natural Resources Division
150 M Street, NE
Washington, D.C. 20002
(202) 514-2398
sydney.menees@usdoj.gov
DAVID L. NEGRI (Idaho Bar # 6697)
Trial Attorney
Environment and Natural Resources Division
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, Idaho 83702
(208) 334-1936
david.negri@usdoj.gov

STEPHANIE M. HINDS (Cal. Bar # 154284)
United States Attorney
MICHELLE LO (New York Bar # 4325163)
Chief, Civil Division
MICHAEL T. PYLE (Cal. Bar # 172954)
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5087

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT,<br><br>        Plaintiffs,<br><br>    v.<br><br>NATIONAL PARK SERVICE, a federal agency,<br><br>        Defendants. | Case No. 4:22-cv-145-KAW<br><br>**INITIAL JOINT CASE MANAGEMENT STATEMENT**<br><br>Hearing Date: April 12<br><br>Time: 1:30 pm<br><br>Place: TBD<br><br>Judge: Honorable Kandis A. Westmore |

– Page 1

The parties to the above-entitled action jointly submit this Joint Case Management Statement pursuant to this Court's Order, ECF No. 9, the Standing Order for All Judges of the Northern District of California: Contents of Joint Case Management Statement, and Local Rule 16–9.

1. **Jurisdiction and Service:**

This Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' claims for relief, which arise under federal statutes, including 54 U.S.C. § 100101 *et seq.*, 16 U.S.C. § 459c *et seq.*, 42 U.S.C. § 4321 *et seq.*, 33 U.S.C. § 1251 *et seq.*, 5 U.S.C. § 701, *et seq.*, 28 U.S.C. § 2201 *et seq.*, and 28 U.S.C. § 2412 *et seq*. The Plaintiffs allege a waiver of sovereign immunity from the Administrative Procedure Act (APA).

2. **Facts:**

Plaintiffs

This case concerns the National Park Service's (hereinafter NPS) decision to continue and expand private beef and dairy ranching on public lands at Point Reyes National Seashore (hereinafter "the Seashore") and the Northern District of Golden Gate National Recreation Area (GGNRA) through an amendment to its 1980 General Management Plan (GMPA). NPS has authorized ranching for decades on these public lands even though the federal government spent millions of dollars purchasing private ranches to create the National Seashore, along with GGNRA, in the 1970s for public benefit, inspiration, and recreation.

Since that time, beef and dairy ranching has damaged natural resources and public use of these public lands by, *inter alia*, polluting and using scare water resources, displacing endemic tule elk that were restored to the Seashore at great taxpayer expense, impeding recreation and public access, and harming wildlife and habitat. Despite these impacts, NPS had never analyzed the environmental impacts of ranching, as required by the National Environmental Policy Act (NEPA), until Plaintiffs' 2016 lawsuit and settlement forced the agency to issue its first-ever Environmental Impact Statement (EIS) in 2020.

NPS relied on that EIS to issue an amendment to its 1980 General Management Plan in September 2021, which for the first time in the history of the Seashore decided that ranching was compatible with the Point Reyes Enabling Act and other laws, and thus should continue in perpetuity. The GMPA and accompanying Record of Decision (ROD) selected an alternative studied in the EIS that increases the scope of lands zoned for ranching under the 1980 GMP, allows ranchers to seek expansion of their operations through a variety of new commercial activities like different livestock types, crops, and mobile slaughterhouses, and provides for NPS to maintain artificially low tule elk populations by, *inter alia*, killing individual elk that exceed an arbitrary population threshold each year. More than 90% of the public comments submitted during the planning process supported a different path forward, with many calling for the agency to adopt alternatives that would have phased out ranching and restored some or all of these public lands to public use and enjoyment.

The GMPA, ROD, and EIS brushed aside concerns raised by the public and other agencies, ignored evidence that ranching has impaired and will continue to impair the environment and public uses of the Seashore, and imposed insufficient mitigation measures to ensure the maximum protection of natural resources. In so doing, NPS prioritized the commercial needs of a select number of private ranchers at the expense of Plaintiffs, their members, and the millions of people who use and enjoy the National Seashore each year.

<u>Defendants</u>

Plaintiffs Complaint alleges four claims against the *General Management Plan Amendment for Point Reyes National Seashore and north district of Golden Gate National Recreation Area* (GMPA). The GMPA was prepared in accordance with the National Environmental Policy Act (NEPA) and other applicable laws. The NPS released a draft environmental impact statement for public review and comment in August 2019 and a final environmental impact statement in September 2020. The NPS issued a Record of Decision (ROD) on the GMPA on September 13, 2021.

The alternative selected in the ROD (Selected Action) updates management guidance for the planning area, which comprises approximately 28,000 acres. Of relevance to this litigation,

– Page 3

the GMPA will amend the 1980 General Management Plan for these lands by adopting a new zoning framework and new programmatic management direction. The NPS will apply two new management zones to the planning area, the Ranchland zone and the Scenic Landscape zone. Consistent with applicable laws, multi-generational ranching activities are considered an appropriate, ongoing use of lands within the Ranchland zone. The Ranchland zone is divided into subzones that limit ranching activities based on resource management goals and objectives for each subzone. The continuation of active ranching as authorized under the Selected Action is consistent with the primary preservation approach for effective preservation of the Point Reyes Peninsula and Olema Valley Dairy Ranches Historic Districts under *The Secretary of the Interior's Standards for the Treatment of Historic Properties.*

The ROD also adopts detailed management strategies to achieve the desired conditions for the preservation of park resources, and it adopts strategies and actions to support public use and enjoyment of land in the planning area.

Under the Selected Action, ranching would be reduced compared to current conditions. For example, the Selected Action reduces the number of dairies in the planning area from six to five, reduces the authorized number of cattle on ranches, reduces the number of acres open to grazing, and reduces the number of acres where forage crops can be grown. To receive long-term leases from NPS to continue ranch operations, ranchers will be required to enter into a Ranch Operating Agreement that will identify infrastructure and investment commitments for dairy and beef grazing operations that will accelerate implementation of practices to further support natural and cultural resource protection objectives.

Free ranging elk in the planning area would be managed in cooperation with the California Department of Fish and Wildlife and in accordance with a government-to-government agreement with the Federated Indians of Graton Rancheria. The Drakes Beach herd would be managed to a population threshold of 140 animals, and the herd's core area would be allowed to expand. Ranchers operating in areas with regular elk use would be required to modify cattle feeding strategies to reduce potential conflicts with elk.

The environmental impact statement for the GMPA fully and fairly disclosed the impacts of the selected action. As explained in the ROD, the Selected Action will result in a number of improved natural and cultural resource conditions and will not impair park resources. The Selected Action is consistent with the NPS's statutory mission and responsibilities, Congressional intent, and park purposes.

**3.  Legal Issues:**

1) Whether NPS's GMPA as adopted in the ROD is inconsistent with the Point Reyes Act. 16 U.S.C. § 459c, et seq.

2) Whether NPS's GMPA as adopted in the ROD is inconsistent with the Organic Act. 54 U.S.C. § 100101; 54 U.S.C. § 100752.

3) Whether NPS's EIS complies with NEPA, 42 U.S.C. § 4321 *et seq.*, and its implementing regulations, 40 C.F.R. § 1500 *et seq.*

4) Whether NPS ensured that the GMPA as adopted in the ROD complied with the CWA, 33 U.S.C. § 1323(a).

**4.  Motions:**

Based on recent public commitments from NPS, Plaintiffs do not anticipate filing a motion for preliminary relief but reserve the right to do so if NPS takes action to issue long-term leases, kill Tule elk, or implement other key parts of the ROD.

As described below, Plaintiffs believe that splitting up their claims into two partial summary judgment motions will allow for the most efficient resolution of the case and request that the Court bifurcate summary judgment briefing. Defendants believe resolution of all outstanding issues is preferable and plan to file a summary judgment motion as to all issues.

**5.  Amendment of Pleadings:**

Plaintiffs may amend their Complaint to add new claims but request that the Court defer setting a deadline doing so. Defendants request a deadline for amendment of pleadings of September 4, 2022, 30 days after filing of the administrative record.

**6–8: Evidence Preservation, Disclosures, and Discovery**

The parties have met and conferred about discovery issues under Fed. R. Civ. P. 26(f) and agree that discovery is not needed for Plaintiffs' four claims for relief because Plaintiffs challenge final agency actions under the Administrative Procedure Act (APA), which limits judicial review to the administrative record unless the court allows supplementation of the record.

**9. Class Actions:**

This is not a class-action matter.

**10. Related Cases:**

The parties are unaware of any active related cases. However, this case arose out of previous litigation, *Resource Renewal Institute, et al., v. National Park Service*, 4:16-cv-00688-SBA (N.D. Cal.).

**11. Relief:**

Plaintiffs seek declaratory and injunctive relief that requires NPS to fulfill mandatory duties related to its management of the National Seashore and GGNRA. Plaintiffs may seek attorneys' fees as allowed under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*. Plaintiffs reserve the right to amend their prayer for relief to seek additional remedies.

**12. Settlement and ADR:**

Plaintiffs and NPS intend to stipulate to an ADR process and are in the process of exploring options to retain a private mediator. The parties intend to meet and discuss the potential for settlement this spring.

**13. Consent to Magistrate Judge For All Purposes:**

Plaintiffs have consented to proceed in front of a Magistrate Judge. Defendants have declined.

**14. Other References:**

Plaintiffs do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing of Issues:**

Plaintiffs believe that filing a partial summary judgment motion this fall may narrow the issues and allow for a more efficient resolution of this case. Plaintiffs' complaint raises four claims for relief that involve complex factual and legal issues, which may be challenging for the parties to address, and the Court to resolve, in a single set of summary judgment briefs. Plaintiffs request a schedule that requires the parties to file partial summary judgment briefs on Plaintiffs' first and second claims that address NPS's obligations under the Point Reyes Enabling Act and the Organic Act. Plaintiffs believe such a bifurcated schedule could allow for the resolution of threshold legal issues that may narrow the parties' remaining disputes or make it unnecessary to address the remaining claims, thereby preserving the resources of the parties and this Court. Partial summary judgment motions that facilitate a thorough and timely resolution of key, threshold issues will most effectively further the substantial public interest at stake in this case.

Defendants believe resolution of all outstanding issues is preferable and plan to file a summary judgment motion as to all issues.

Given Defendants' opposition to bifurcation, Plaintiffs request that the Court rule on whether the summary judgment briefing should be bifurcated for all parties.

**16. Expedited Trial Procedure:**

Plaintiffs do not believe an expedited schedule is appropriate.

**17. Scheduling:**

Counsel for the parties have met and conferred, and based on their schedules, they propose the following pretrial dates:

- NPS to file the administrative record: August 5, 2022
- Resolution of record disputes and/or filing a Motion to Complete the Record: September 9, 2022
- Plaintiffs' Partial Summary Judgment brief: October 14, 2022*
- Defendants' Cross Summary Judgment/response brief: November 11, 2022
- Plaintiffs' response/reply brief: December 2, 2022
- Defendants' reply brief: December 23, 2022

If Plaintiffs file a Motion to Complete the Record, this briefing schedule would need to be vacated and reset once the Court rules on such a motion.

*If the Court declines Plaintiffs' request to bifurcate summary judgment briefing, Plaintiffs request the opportunity to propose a new schedule that accounts for briefing all claims at once.

**18. Trial:**

The parties do not anticipate that a trial will be necessary.

**19. Disclosure of Non-party Interested Entities or Persons:**

Plaintiff

Plaintiffs have complied with Civil Local Rule 3-15 by filing the required disclosure, and there are no such interests to report.

**20. Professional Conduct:**

All counsel have reviewed the Guidelines for Professional Conduct.

**Other:** None.

Dated: April 5, 2022                    Respectfully submitted,

                                        TODD KIM
                                        United States Department of Justice
                                        Assistant Attorney General

                                        /s/ David L. Negri
                                        SYDNEY MENEES, Trial Attorney
                                        DAVID L. NEGRI, Trial Attorney
                                        United States Department of Justice
                                        Environment and Natural Resources Division

                                        /s/ Elizabeth H. Potter (consent to file 04/05/22)
                                        Laurence ("Laird") J. Lucas (CA Bar No. 124854)
                                        llucas@advocateswest.org
                                        Elizabeth H. Potter (pro hac vice)
                                        epotter@advocateswest.org
                                        Andrew R. Missel (pro hac vice)
                                        amissel@advocateswest.org
                                        ADVOCATES FOR THE WEST
                                        PO Box 1612
                                        Boise ID 83701
                                        Telephone: (208) 342-7024

                                        *Attorneys for Plaintiffs*