Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:     (415) 402-2700
Facsimile:     (415) 398-5630
Email:         tfrancois@briscoelaw.net

Caroline Lobdell, Ore. Bar #021236, *pro hac vice forthcoming*
Aaron Bruner, Ore. Bar #133113, *pro hac vice forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:     (503) 768-8500
Facsimile:     (503) 222-3255
Email:         clobdell@wrlegal.org
               abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenor
POINT REYES SEASHORE RANCHERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT,<br><br>                Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, a federal agency,<br><br>                Defendant,<br><br>POINT REYES SEASHORE RANCHERS ASSOCIATION,<br><br>                Proposed Defendant-Intervenor. | Case Number: 3:22-cv-00145-MMC<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      Friday, May 27, 2022<br>Time:      9:00am<br>Room:      Courtroom 7, 19th Floor<br>Judge:     Maxine M. Chesney |

**NOTICE OF MOTION**

TO THIS HONORABLE COURT AND COUNSEL FOR THE PARTIES:

PLEASE TAKE NOTICE, that on Friday, May 27, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Senior District Judge Maxine M. Chesney, at the San Francisco Courthouse, Courtroom 7 – 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, that the POINT REYES SEASHORE RANCHERS ASSOCIATION hereby moves for leave to intervene as a defendant in the above-entitled action.

**MOTION**

Pursuant to Fed. R. Civ. P. 24, the Point Reyes Seashore Ranchers Association ("PRSRA" or "Proposed Intervenor") moves to intervene in this case as a matter of right.  In conferring on this motion, counsel for Federal Defendant National Park Service ("NPS") indicated the agency was unable to state its position until after review of the motion.  Counsel for Plaintiffs have likewise indicated they reserve their position on the motion until counsel review the final filing.[1]

PRSRA is an association consisting of individuals and members of ranching families that have been stewards of the rangelands and waters on the Point Reyes National Seashore ("Seashore") for many generations.  PRSRA's members currently hold active leases/permits for ranch properties on the Seashore that will be impacted by this litigation.  These ranches, and the surrounding area, were designated as the Point Reyes National Seashore in 1962, serving as a testament to the many decades of superior ranch management on the Point Reyes peninsula that has contributed to the cultural, historic, scenic, and environmental quality of the Seashore.  Since

---

[1] Counsel for the PRSRA initially emailed counsel for Plaintiffs via email on March 18, 2022, seeking Plaintiffs' position on the forthcoming motion.  At the request of Plaintiffs' counsel, Elizabeth Potter, we agreed to confer regarding the PRSRA's motion to intervene via a Zoom meeting scheduled for Friday, April 1, 2022, during which Plaintiffs' counsel was advised of the PRSRA's current membership, and Plaintiffs' counsel advised that they would not take a position on the motion prior to reviewing the final filing.  On April 5, Plaintiffs' counsel Elizabeth Potter emailed seeking additional clarification regarding PRSRA's membership.  In response to that request, the nature of the PRSRA organization and the current PRSRA membership are set forth in the Declaration of Ernest Spaletta, filed herewith in support of this motion.

NOTICE OF MOTION AND MOTION TO INTERVENE                    3:22-cv-00145-MMC

1  then, ranching has continued, the land remains productive, wildlife is still abundant, and the
2  scenery is still spectacular.
3        The subject of Plaintiffs' lawsuit directly implicates PRSRA members' leases/permits
4  and other longstanding interests in the Seashore.  In particular, Plaintiffs seek to overturn several
5  significant elements of the National Park Service's recent Record of Decision ("ROD") on the
6  General Management Plan Amendment ("GMPA") and corresponding National Environmental
7  Policy Act ("NEPA") analysis that evaluates the issuance of long-term leases/permits to ranchers
8  on the Seashore, the management of tule elk, and addresses the best management practices to
9  promote protection of resources on the Seashore.  As such, this lawsuit poses a serious threat to
10 the stability of these longstanding family ranches on the Seashore by undermining a process that
11 would provide long-term certainty for the families who live and work there.
12        As set forth more fully below, Proposed Intervenor the PRSRA, on behalf of its
13 members, satisfies the criteria for intervention as of right under Fed. R. Civ. P. 24(a).  As cattle
14 and dairy ranchers who have lived and grazed the Seashore for decades and, in many cases,
15 multiple generations, PRSRA members have numerous protectable interests at issue in this
16 litigation.  *See e.g.*, Spaletta Dec. ¶¶ 18-20, 23-28; Lunny Dec. ¶¶ 2-4, 7-9; McIsaac Dec. ¶¶ 2, 5,
17 6-7, 9; Grossi Dec. ¶¶ 3-9; Lucchesi Dec. ¶¶ 2-9; McClelland Dec. ¶¶ 2-4, 8-9.  In addition to the
18 ongoing interest in their ranch leases/permits, PRSRA members have economic, environmental,
19 aesthetic, and recreational interests in the administration of the National Seashore.  An adverse
20 decision affecting the GMPA will impair these interests, as well as PRSRA members' ability to
21 reside (as they have for generations) on the Seashore.
22        Plaintiffs allege NPS violated the Administrative Procedure Act ("APA"), NEPA, the
23 National Park Service Act and Point Reyes Act (collectively "Park Acts"), and the Clean Water
24 Act ("CWA") by authorizing grazing permits in the Point Reyes National Seashore.  Plaintiffs
25 claim that such authorized grazing is harmful to the National Seashore's natural resources,
26 including riparian areas and fish habitat.  Dkt. No. 1 ¶¶ 45-56.  Put simply, Plaintiffs allege that
27 the NPS must phase out livestock grazing and that such grazing authorizations violate key
28 federal environmental laws.  *See, e.g.*, Dkt. No. 1 ¶¶ 78, 153 and at 39-40 (Prayer for Relief).

-3-

NOTICE OF MOTION AND MOTION TO INTERVENE          3:22-cv-00145-MMC

Effectively, what Plaintiffs seek will undermine the PRSRA's (and its members') rights and ability to use and reside on the Seashore, potentially stripping PRSRA members of their livelihoods and ways of life, and for many who reside on the Seashore, their homes.

Additionally, this motion is timely and the existing parties do not adequately represent the PRSRA's unique interests. The Defendant, NPS, has only recently appeared in the case and filed its Answer, and no discovery or substantive briefing has occurred. NPS cannot adequately represent Proposed Intervenor, given the agency's duty to represent a broader array of public interests than those specific to Proposed Intervenor. Indeed, PRSRA members were negatively impacted by several decisions made during the GMPA process, including, among other things, the agency's decision to deny the ranches' ability to diversify into various types of additional agricultural activities on the Seashore. PRSRA members also have first-hand knowledge of the decades-long history since the Seashore's inception that may be helpful to the Court in resolving this dispute, including the specific ranching authorizations, lease/permit terms and conditions, and long-running history of the right of use and residence for each of the affected ranches.

This motion is supported by the Memorandum below, the pleadings on file with the Court, the Declarations of Richard Grossi, Gino Lucchesi, Kevin Lunny, Jolynn McClelland, Ted McIsaac, Paulette Percy, and Ernest Spaletta, and a proposed Answer in Intervention.

Proposed Intervenor respectfully requests that this Court enter an order granting the PRSRA leave to intervene in this action as a party defendant in order to fully participate in the resolution of this case, and to order the filing of the accompanying proposed Answer in Intervention (attached as Attachment 1 to this Motion to Intervene).

NOTICE OF MOTION AND MOTION TO INTERVENE                3:22-cv-00145-MMC

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

Pursuant to Local Rule 7-4(a)(3), the issue to be decided is whether proposed defendant intervenors have a right to intervene in this case under Fed. R. Civ. P. 24(a).

A party may intervene as a matter of right, under Fed. R. Civ. P. 24(a), where: (1) the applicant's motion is timely; (2) the applicant asserts an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. *Cty. of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987) (citations omitted); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002); *Wilderness Soc'y. v. Forest Serv.*, 630 F.3d 1173, 1177-78 (9th Cir. 2011) (eliminating the "none but the federal defendant rule" in a NEPA case). Furthermore, the non-conclusory allegations of a Motion to Intervene are accepted as true. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819-820 (9th Cir. 2001).

## I.    Proposed Intervenor's Motion to Intervene is Timely.

In determining whether a motion to intervene is timely, the Court must consider three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Cty. of Orange*, 799 F.2d at 537; *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (noting appraisal of the timeliness of a motion to intervene requires a "nuanced, pragmatic" approach). Here, the stage of the proceeding is such that no substantive proceedings have occurred. The complaint was only filed in January 2022. Dkt. No. 1. Federal Defendants filed their Answer on March 21, 2022. Dkt. No. 20. No administrative record has been filed and no discovery has occurred. Given that the procedural posture of this case remains at its most initial stages, there is no indication of any prejudice to the parties or undue delay by the Proposed Intervenor. Thus, intervention is timely.

## II.   Proposed Intervenor's Members Have Protectable Interests in this Action.

The interest prong of the intervention test is a threshold criterion, not a determinative one. *Berg*, 268 F.3d at 818 (citations omitted). The Ninth Circuit liberally construes intervention of

right, *see Greene v. United States*, 996 F.2d 973, 979 (9th Cir. 1993), and "reject[s] the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citations omitted).  Rather, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).  It suffices that the interest is "protectable under some law" and there is "a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (en banc).

Plaintiffs generally challenge the GMPA/ROD that will serve as the basis for the upcoming renewal of ranching authorizations on the Point Reyes National Seashore and the northern district of the Golden Gate National Recreation Area ("GGNRA").  Dkt. No. 1. Plaintiffs challenge the adequacy of the environmental analysis for the GMPA/ROD as a basis for issuing 20-year leases/permits to Proposed Intervenor's members, as well as the approval of ranching operations and tule elk management authorized by the ROD, additionally asserting a Clean Water Act claim tied to ranching operations on the Seashore.  *Id.*; *id.* at ¶¶ 166-74.  As such, not only does Proposed Intervenor have protectable interests in the subject of this case, Proposed Intervenor's members are, indeed, the very target of Plaintiffs' Complaint.  Moreover, Proposed Intervenor's members have their own uniquely situated economic, aesthetic, environmental, recreational, and other interests related to the subject of this litigation.

A.    **Proposed Intervenor's members have economic interests in their lease-permits and residential use of the Seashore and north district of the GGNRA.**

There is no dispute that Proposed Intervenor's members live on the National Seashore and within the northern district of the GGNRA, where they have authorizations to graze livestock.[2]  Proposed Intervenor's members each have grazing authorizations contemplated by this litigation and subject to the GMPA/ROD process Plaintiffs seek to disrupt.  Indeed, the

---

[2] Copies of all Point Reyes and north district GGNRA leases/permits are publicly available on the NPS website. *See* NAT'L PARK SERV., *Ranching and Dairying Lease/Permits*, https://www.nps.gov/pore/getinvolved/planning_ranch_cmp_leases_permits.htm (last visited Apr. 6, 2022).

NOTICE OF MOTION AND MOTION TO INTERVENE                    3:22-cv-00145-MMC

ranchers currently have short-term, interim leases/permits that were the result of a settlement in a prior case brought by these very same Plaintiffs, *Resource Renewal Institute, et al. v. National Park Serv.*, Case No. 4:16-cv-00688-SBA (N.D. Cal.), and in which PRSRA members successfully intervened (and participated in settlement negotiations). According to the settlement, those leases/permits are set to expire on July 14, 2022, making the upcoming lease/permit renewal and Ranch Operating Agreement development process of paramount importance to Proposed Intervenor's members. *See id.*, Dkt. No. 143; *infra* n.4 (discussing settlement terms in more detail).

PRSRA members are dependent on such leases/permits and corresponding grazing authorizations for their families' livelihoods, homes, economic, and personal well-being. *See* Spaletta Dec. ¶ 26; Lunny Dec. ¶ 4; Grossi Dec. ¶ 7; McIsaac Dec. ¶ 4; Lucchesi Dec. ¶ 6; McClelland Dec. ¶ 3. Without authorization to graze, PRSRA members' ranching operations would be devastated, destroying their long-established family businesses, some of which include families that homesteaded on the seashore. *See, e.g.*, McIsaac Dec. ¶ 6. Further, Plaintiffs also directly challenge the continued validity of Federal Defendant's GMPA/ROD for the Seashore and GGNRA, which acknowledges and contemplates continued dairying and cattle ranching as consistent with the Park Acts. *See, e.g.*, Dkt. No. 1 ¶¶ 81-96.

Proposed Intervenor's members have economic interests in the current and future authorizations permitting their livestock ranching as an integral part of the scenic, cultural, and ecological foundation of the Seashore and which supports their livelihoods. Spaletta Dec. ¶¶ 18-20, 23-28; Lunny Dec. ¶ 4, 7, 9; Grossi Dec. ¶¶ 7, 8-9; McIsaac Dec. ¶¶ 4, 8, 9; Lucchesi Dec. ¶¶ 6, 8-11; McClelland Dec. ¶¶ 2-4, 8-9. In fact, PRSRA members' families have lived and been raised on the Seashore and cared for its grasslands for decades and generations. *Id.* PRSRA members' authorizations include the right to live in the homes their families built on the seashore and work the land they acquired when they first arrived in this Country. *See, e.g.*, Grossi Dec. ¶¶ 3-5. Plaintiffs not only challenge the long-term leases/permits and authorizations of grazing pursuant to the GMPA/ROD, but also seek long-term "phase out" of ranching in general. Dkt. No. 1 ¶¶ 78, 153. Proposed Intervenor's members are dependent upon such grazing

-7-

1  authorizations for their livelihoods and economic well-being and a permanent phase out of

2  ranching directly threatens their livelihood and the future of their family ranching operations.

3  Spaletta Dec. ¶ 26; Lunny Dec. ¶ 4; Grossi Dec. ¶ 7; McIsaac Dec. ¶ 4; Lucchesi Dec. ¶ 6;

4  McClelland Dec. ¶ 3.

5      A contract or lease interest at issue in the litigation constitutes a protectable interest

6  warranting intervention, even in a case asserting claims under NEPA or the Endangered Species

7  Act. *See Berg*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests.").

8  Without the 20-year leases/permits authorized by the GMPA/ROD, Proposed Intervenor's

9  members lack the ability to engage in meaningful, long-term planning on whether their multi-

10  generational family businesses will continue to exist.  Spaletta Dec. ¶¶ 26-28; Lunny Dec. ¶ 5, 7;

11  Grossi Dec. ¶ 6; McIsaac Dec. ¶¶ 6-7; Lucchesi Dec. ¶ 7; McClelland Dec. ¶¶ 4, 6, 8.

12      Elimination of grazing would not only harm PRSRA members economically, but would

13  also displace many from their current homes – requiring PRSRA members to find alternative

14  places to live – while simultaneously devastating the very livelihood needed to financially

15  support such alternative housing.  *See e.g.*, Lunny Dec. ¶ 2-3, 5.

16      **B.    Proposed Intervenor's members have protectable aesthetic, environmental, and recreational interests.**

17  Proposed Intervenor's members also have an interest in the agricultural nature of the

18  Point Reyes National Seashore and GGNRA given the fact that their multi-generational ranching

19  operations have long contributed to the pastoral scenery and working landscape of the Point

20  Reyes area.  Spaletta Dec. ¶¶ 9; Lunny Dec. ¶ 14; Grossi Dec. ¶ 8; McIsaac Dec. ¶ 8; Lucchesi

21  Dec. ¶ 8; Percy Dec. ¶ 3; McClelland Dec. ¶¶ 9.  The pastoral landscape on the Seashore, upon

22  which Plaintiffs claim aesthetic and recreational standing, in part, exists due to the stewardship

23  from generations of PRSRA members' ranching, dairying, and agricultural use.  *Id.*  Maintaining

24  the health and productivity of the land is an environmental interest shared by all PRSRA

25  members because good soil and water is the foundation for the growth of nutritious forage,

26  which feeds the livestock that supports the livelihood of those ranchers.  Furthermore, Proposed

27  Intervenor's members actively engage in environmental stewardship, such as building fences

28

-8-

along creeks and wetlands to help protect plants and wildlife, using erosion control measures, and rotating and deferring cattle use among pastures to keep the grassland healthy. *See, e.g.*, Grossi Dec. ¶ 8; Lunny Dec. ¶ 8; Lucchesi Dec. ¶ 8.

Finally, Proposed Intervenor's members experience the Point Reyes Seashore daily given that they live, work, and recreate on the Seashore. Spaletta Dec. ¶ 26; Lunny Dec. ¶¶ 15-16; Grossi Dec. ¶¶ 4, 9; McIsaac Dec. ¶¶ 2-3; Lucchesi Dec. ¶¶ 9-11; McClelland ¶ 9. PRSRA members recreate, hike, observe wildlife and scenery, photograph, reside in, and enjoy the cultural and educational roles that ranching and agricultural use contributed historically and continue to provide to the pastoral setting of the Point Reyes National Seashore. *Id.* Accordingly, PRSRA members also have aesthetic and recreational interests in the Point Reyes National Seashore. Additionally, PRSRA members' ranching practices have helped provide many environmental benefits to the landscape, such as helping prevent the spread of invasive brush that shades out desirable grasses and forbs and keeps the vegetative fuel load from building to dangerous levels. Spaletta Dec. ¶ 13-20; Lunny Dec. ¶¶ 13-14; Grossi Dec. ¶ 8; McIsaac Dec. ¶ 8; Lucchesi Dec. ¶ 8; Percy Dec. ¶ 3; McClelland Dec. ¶ 5. Thus, Proposed Intervenor has demonstrated protectable aesthetic, environmental, and recreational interests on behalf of its members supporting intervention of right, just as plaintiff asserts these interests support their standing. *Wilderness Soc'y*, 630 F.3d at 1176-80 (groups with interest in motorized recreation could intervene in NEPA suit challenging agency's travel management plan).

## III. Resolution of this Case May Impair the Interests of Proposed Intervenor.

An applicant for intervention under Rule 24(a) must be "so situated that the disposing of the action may as a practical matter impair or impede the movant's ability to protect that interest." Fed. R. Civ. P. 24(a) (emphasis added). This inquiry "is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (citation omitted). The PRSRA's and its members' interests depend on being able to continue to live and graze livestock in the Point Reyes National Seashore and the north district of the GGNRA. Plaintiffs seek permanent injunctive relief that may preclude NPS from pursuing 20-year leases/permits under the GMPA/ROD. Dkt. No. 1 at 39-40.

1    Should the Court grant Plaintiffs' requested relief, in whole or in part, PRSRA members

2    may be deprived of their ability to continue to graze and live on the Seashore.  Even if this Court

3    grants only the declaratory relief sought by Plaintiffs, it will deprive PRSRA members of long-

4    term certainty provided by the forthcoming 20-year leases/permits.  Such a result would

5    significantly impair the PRSRA's and its members' interests in their homes, ranching businesses,

6    livelihoods, and way of life.

7        Plaintiffs additionally seek to invalidate many of NPS's elk management determinations,

8    including but not limited to the population level determination for the Drakes Beach herd of tule

9    elk and various fencing approvals, in order to increase elk numbers on the Seashore.  *See, e.g.*,

10   Dkt. No. 1 at 29, 30, 34, 36.  Given that ranchers already face considerable economic and other

11   impacts from tule elk on their ranches, such relief would likely exacerbate such issues and, in

12   some cases, make ranching unworkable.  *See, e.g.*, Spaletta Dec. ¶¶ 22-25.

13       Given these likely impairments of PRSRA members' interests, Proposed Intervenor

14   meets the practical impairment factor supporting intervention of right on behalf of its members.

15   **IV.    Existing Parties do not Adequately Represent the Interests of the PRSRA.**

16       In the Ninth Circuit "[t]he applicant-intervenor's burden in showing inadequate

17   representation is minimal: it is sufficient to show that representation may be inadequate." *Forest*

18   *Conservation Council*, 66 F.3d at 1498; *see also Trobovich v. United Mine Workers*, 404 U.S.

19   528, 538 n.10 (1972); *see also Arakakai v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

20   When deciding whether representation by existing parties will be adequate, the court must

21   consider: (1) whether the interest of a present party is such that it will undoubtedly make all the

22   intervenor's arguments; (2) whether the present parties are capable and willing to make such

23   arguments; and (3) whether the intervenor would offer any necessary elements to the

24   proceedings that other parties would neglect.  *Forest Conservation Council*, 66 F.3d at 1498-99.

25   Finally, if existing parties have the same "ultimate objective" as the proposed intervenor, then

26   any presumption of adequate representation will be rebutted by a showing that the proposed

27   intervenor's objective is of a different scope than the existing party.  *Berg*, 268 F.3d at 823.

28

-10-

NOTICE OF MOTION AND MOTION TO INTERVENE          3:22-cv-00145-MMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.      **Existing parties will not "undoubtedly" make "all" the same arguments as Proposed Intervenor.**

Plaintiffs cannot be expected to make the same arguments as Proposed Intervenor because Plaintiffs' interests are clearly adverse to those of Proposed Intervenor.  The NPS will not undoubtedly make all the arguments in support of the continuation of PRSRA members' ranching, agricultural, and residential uses on the Seashore because the NPS is charged with advocating on behalf of the public interest and addressing multiple environmental interests and does not share the same private interests as Proposed Intervenor.  In fact, Plaintiffs claim that the NPS is required by its governing statutes, regulations, and polices to eliminate or significantly restrict grazing whenever possible.  Dkt. 1 ¶¶ 153.

No existing party is capable of making the same arguments as Proposed Intervenor because no existing party shares Proposed Intervenor's unique perspective and interests relating to Plaintiffs' claims.  The Point Reyes Act provided that the ranchers and families, which include PRSRA members, had a right to use and occupy the pastoral zone when the NPS acquired their land.  16 U.S.C. § 459c-5(a).  Since then, PRSRA members have consistently, and without interruption, continued to graze and reside in the pastoral zone by way of the retained rights and other authorizations.  *See e.g.*, Spaletta Dec. ¶¶ 9-11; McIsaac Dec. ¶¶ 6-7; Lunny Dec. ¶¶ 3-6; Grossi Dec. ¶¶ 3-6; Lucchesi Dec. ¶¶ 2-5, 7; McClelland Dec. ¶¶ 2-4.

The PRSRA members' ability to continue grazing and living on the Seashore provides economic opportunities for PRSRA members' small, multigenerational family businesses; these businesses may cease to exist because of this litigation.  The NPS controls the fate of PRSRA members' ability to graze and reside on the Seashore.  Yet, as a public agency, NPS must also balance the competing interests of Plaintiffs and answer to the public at large.

Therefore, NPS is not equally capable of making the same arguments as the Proposed Intervenor, whose members' livelihoods and current existence is subject to the NPS's policies.  No other party in the lawsuit shares that position or is able to make all the same arguments.

NOTICE OF MOTION AND MOTION TO INTERVENE                3:22-cv-00145-MMC

**B.      Proposed Intervenor would bring necessary elements to the proceedings that existing parties would neglect.**

Unlike the NPS employees that move from park to park throughout their careers, Proposed Intervenor represents ranchers who bring vast local and historical knowledge about the Point Reyes National Seashore, and the measures that have been taken to sustain and improve ranching and the environmental quality of the National Seashore. *See, e.g.*, Spaletta Dec. ¶ 13-20; Lunny Dec. ¶¶ 13-14; Grossi Dec. ¶ 8; McIsaac Dec. ¶ 8; Lucchesi Dec. ¶ 8; Percy Dec. ¶ 3; McClelland Dec. ¶ 5.

For example, as mentioned in the complaint, in 1979 the NPS reintroduced tule elk, despite opposition from Point Reyes ranchers, resulting in the permanent eviction of a multigenerational ranching family.  Lucchesi Dec. ¶ 4.  Since then, the NPS has been unable to effectively manage the tule elk population as the population has vastly exceeded its carrying capacity.  By failing to manage the tule elk population in a sustainable way, the tule elk have expanded outside of their designated reserve area and onto the historic ranch properties, thereby hindering PRSRA members' grazing.  The Lucchesi family is a prime example of diverging interests over tule elk management, which Plaintiffs raise in their Complaint.  Lucchesi Dec. ¶ 4. Gino Lucchesi's father-in-law was ultimately forced by NPS to permanently move from Pierce Point Ranch so that the agency could repurpose his ranch for the currently existing tule elk reserve.  *Id.*  Given these types of direct conflicts of interest, the NPS cannot adequately represent the PRSRA and its members' unique personal interests.

Also, Plaintiffs claim that grazing has a negative impact on the Point Reyes National Seashore.  Dkt. 1 at ¶¶ 45-56.  According to the Plaintiffs, the grazing authorizations have also contributed to water quality violations.  Dkt. No. 1 at ¶¶ 166-74.  PRSRA members maintain to the contrary that there are environmental benefits of grazing, such as reducing the risk of catastrophic wildfire and minimizing the spread of invasive species.  Lunny Dec. ¶ 14; Grossi Dec. ¶ 8; McIsaac Dec. ¶ 8; Lucchesi Dec. ¶ 8.  Proposed Intervenor is in the unique position to advance the arguments for continued grazing on their particular ranches and the economic, cultural, environmental, and scenic value they provide.  Proposed Intervenor represents a truly unique and unrepresented voice in the present action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.      **The presumption of adequate representation by the federal government is rebutted.**

If an existing party and the proposed intervenor have the same "ultimate objective," then the presumption of adequate representation arises. *Berg*, 268 F.3d at 823.  A presumption of adequate representation may arise when the existing party is "a governmental body or officer charged by law with representing the interests of the absentee." *Forest Conservation Council*, 66 F.3d at 1499 (citation omitted).  However, the presumption does not apply when the government is charged with representing a broader interest than the more narrow interests of the proposed intervenor. *Id.*  The court must then look at the scope of the parties' interests to see whether the intervenor has a more personal interest than the federal government. If so, intervention should be granted. *Id.*  "Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499.  Here, as explained above, the NPS and Proposed Intervenor do not share the same ultimate objective.

Proposed Intervenor asserts specific and unique personal interests and the NPS is charged with representing the public interest.  PRSRA members' interests in continuing to live on the Seashore and the north district of the GGNRA is an innate personal interest.  PRSRA members also operate family ranching and agricultural businesses that are not publicly owned.  The general public cannot hold these interests because the ability to continue their ranching operations and live in the area is only available to particular families on the Seashore that have historically used the land for ranching, such as the PRSRA's members.

The NPS cannot be assured to align with Proposed Intervenor's interests.  First, as outlined in the proposed Answer, filed herewith, Proposed Intervenor reserves the right to assert one or more cross-claims against NPS.  Second, it is uncertain how NPS's intention to issue long-term leases/permits to PRSRA members may be impacted by this ongoing litigation.  Currently, NPS is authorized to issue 20-year leases/permits under the terms of the current GMPA/ROD.  ROD at 6.  However, it is unclear at this time how NPS plans to deal with the leases going forward, given this ongoing litigation or in the event that the Court accedes to Plaintiffs' demand to enjoin NPS from approving the 20-year leases/permits, as well as other

-13-

1    "new commercial activities [and] expanded ranching operations." Dkt. No. 1 at 39-40.[3]  As of

2    March 21, 2022, it appears that NPS does not intend to follow through with the 20-year

3    leases/permits, due to this pending lawsuit.  *See* Fed. Defs.' Answer, Dkt. No. 20 at ¶ 138 ("NPS

4    denies that it will issue 20-year leases prior to the expiration of the current interim leases.  The

5    NPS avers that it plans to issue short-term (one or two-year) lease extensions prior to the

6    expiration of the interim leases.").  In short, NPS is the landlord and the opposite party to the

7    ranchers as they begin to negotiate new leases/permits pursuant to the GMPA/ROD and

8    authorizations to graze and reside on the Seashore.  Additionally, rancher Kevin Lunny who is a

9    member of proposed intervenor PRSRA is living proof that the NPS's interests may diverge from

10   Proposed Intervenor's interests.  *See Drakes Bay Oyster Co., v. Jewell*, 747 F.3d 1073 (9th Cir.

11   2014) (declining to enjoin NPS's decision not to renew Drakes Bay's special use permit to farm

12   oysters in Drakes Estero estuary).  As such, no existing party in the case adequately represents

13   Proposed Intervenor's unique personal interests.  Any presumption of adequate representation by

14   the federal government is rebutted.  No other party is capable of representing Proposed

15   Intervenor's unique personal interests.

16                                                    **CONCLUSION**

17        For the reasons set forth above, Proposed Intervenor satisfies the criteria to intervene in

18   this case as of right under Fed. R. Civ. P. 24(a).  Accordingly, the Court should grant Proposed

19   Intervenor's Motion to Intervene as a matter of right.  Proposed Intervenor is willing to comply

20   with any briefing schedule set by the Court.

21

22

23   [3] The current status of the leases is also complicated by the existence of so-called "Interim
     Leases" that may expire on July 14, 2022.  Such leases were authorized pursuant to a settlement
24   agreement reached in *Resource Renewal Institute, et al. v. National Park Serv.*, Case No. 4:16-
     cv-00688-SBA (N.D. Cal.).  Pursuant to the agreement, NPS was required to amend the 1980
25   GMP and assess strategies for "future management of the lands" currently leased for ranching
     through preparation of an environmental impact statement and associated Record of Decision by
26   July 14, 2021.  *Id.*, Dkt. No. 143, ¶¶ 1-3.  During this "Interim Period," NPS was able to issue so-
     called "Interim Leases" to ranches already operating within the Seashore through July 14, 2022.
27   *Id.*, Dkt. No. 143, ¶ 4 & Definition G.  The timing of these renewals may lead NPS to again issue
     short-term leases, to the detriment of the interests of PRSRA members.
28
                                                         -14-

1

Respectfully submitted this 20th day of April, 2022.

2

/s/ Tony Francois

3

Tony Francois, Cal. Bar #184100

BRISCOE IVESTER & BAZEL LLP

4

235 Montgomery Street, Suite 935

San Francisco, California, 94104

5

Telephone:      (415) 402-2700

6

Facsimile:       (415) 398-5630

Email:            tfrancois@briscoelaw.net

7

8

/s/ Caroline Lobdell

Caroline Lobdell, Ore. Bar #021236, *PHV*

9

*forthcoming*

10

/s/ Aaron Bruner

11

Aaron Bruner, Ore. Bar #133113, *PHV forthcoming*

WESTERN RESOURCES LEGAL CENTER

12

9220 SW Barbur Blvd., Suite 119 #327

Portland, Oregon 97219

13

Telephone:      (503) 768-8500

14

Facsimile:       (503) 222-3255

Email:            clobdell@wrlegal.org

15

                  abruner@wrlegal.org

16

Attorneys for Proposed Defendant-Intervenor

17

POINT REYES SEASHORE RANCHERS

18

ASSOCIATION

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO INTERVENE                    3:22-cv-00145-MMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Tony Francois, hereby certify that I, on April 20, 2022, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: April 20, 2022

/s/ Tony Francois
Tony Francois

-16-

NOTICE OF MOTION AND MOTION TO INTERVENE                    3:22-cv-00145-MMC