Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:   (415) 402-2700
Facsimile:   (415) 398-5630
Email:       tfrancois@briscoelaw.net

Caroline Lobdell, Ore. Bar #021236, *pro hac vice forthcoming*
Aaron Bruner, Ore. Bar #133113, *pro hac vice forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:   (503) 768-8500
Facsimile:   (503) 222-3255
Email:       clobdell@wrlegal.org
             abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenor
POINT REYES SEASHORE RANCHERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, a federal agency,<br><br>Defendant,<br><br>POINT REYES SEASHORE RANCHERS ASSOCIATION,<br><br>Proposed Defendant-Intervenor. | Case Number: 3:22-cv-00145-MMC<br><br>**[PROPOSED] ANSWER OF DEFENDANT-INTERVENOR** |

# ANSWER

Defendant-Intervenor Point Reyes Seashore Ranchers Association ("PRSRA") hereby answers Plaintiffs' Complaint, Dkt. No. 1, as follows[1]:

1. Paragraph 1 constitutes Plaintiffs' characterization of the purposes and basis for this case, to which no response is required. To the extent a response is required, the PRSRA denies the allegations in Paragraph 1.

2. Paragraph 2 largely characterizes the Point Reyes Act, 16 U.S.C. § 459c, and Golden Gate National Recreation Area ("GGNRA") Act, 16 U.S.C. § 460bb, which speak for themselves and require no response. The PRSRA denies that the Acts did not make ranching a purpose of these public lands or encourage ranching thereon.

3. The PRSRA denies the allegations in Paragraph 3.

4. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 4. The fourth sentence of Paragraph 4 describes the September 2021 Record of Decision ("ROD"), General Management Plan Amendment and corresponding Environmental Impact Statement ("GMPA/EIS") process, which documents speak for themselves and are the best evidence of their contents.

5-6. The PRSRA denies the allegations in Paragraphs 5-6.

7. The PRSRA denies the allegations in the first sentence of Paragraph 7. The allegations in the second sentence of Paragraph 7 constitute Plaintiffs' requested relief, to which no response is required. To the extent a response is required, the PRSRA denies that Plaintiffs are entitled to such relief.

## JURISDICTION

8-10. The allegations in Paragraphs 8-10 are conclusions of law, which require no response. To the extent a response is required, the PRSRA denies those allegations.

---

[1] The headings and numbers used correspond to the headings and paragraph numbers in Plaintiffs' Complaint. The PRSRA denies any allegations implied or made by such headings in the Complaint.

## DIVISIONAL ASSIGNMENT

11. The PRSRA admits that if this Court has jurisdiction, then venue is proper in this District and assignment of this case to a judge in the San Francisco or Oakland Division is proper. The PRSRA denies any remaining allegations in paragraph 11.

## PARTIES

12-18. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 12-18, and thus denies the same.

19. The PRSRA admits that the National Park Service is an agency within the U.S. Department of the Interior and that the Director of the National Park Service is vested with authority to manage units of the National Park System. The PRSRA denies any remaining allegations in paragraph 19.

## LEGAL BACKGROUND

**National Park Service Organic Act**

20. The allegations in Paragraph 20 purport to characterize 54 U.S.C. § 100101(a), which speaks for itself and is the best evidence of its contents.

21. The allegations in Paragraph 21 purport to characterize the National Park Service ("NPS")'s 2006 *Management Policies*, which speaks for itself and is the best evidence of its contents.

22. The allegations in Paragraph 22 purport to characterize the National Park Service ("NPS")'s 2006 *Management Policies*, which speaks for itself and is the best evidence of its contents.

23. The allegations in Paragraph 23 purport to characterize 54 U.S.C. § 100502, which speaks for itself and is the best evidence of its contents.

**Point Reyes National Seashore Act**

24. The allegations in Paragraph 24 purport to characterize 16 U.S.C. § 459c, which speaks for itself and is the best evidence of its contents.

25. The allegations in Paragraph 25 purport to characterize 16 U.S.C. § 459c-2 and § 459c-4, Pub. L. No. 87-657, § 4, 76 Stat. 538, 540 (1962), and Pub. L. No. 91-223, §2(b), 84 Stat. 90 (1970), which speak for themselves and are the best evidence of their contents.

26. The allegations in Paragraph 26 purport to characterize 16 U.S.C. § 459c-6(a) (1970), which speaks for itself and is the best evidence of its contents.

27. The allegations in Paragraph 27 purport to characterize Pub. L. No. 94-567, § 7(a), 90 Stat. 2692, 2695 (1976), which speaks for itself and is the best evidence of its contents.

28. The allegations in Paragraph 28 purport to characterize Pub. L. No. 95-625, § 318(b), 92 Stat. 3467, 3487 (1978), which speaks for itself and is the best evidence of its contents.

**The GGNRA Act**

29. The allegations in Paragraph 29 purport to characterize Pub. L. No. 92-589, § 1, 86 Stat. 1299, 1299 (1972), and 16 U.S.C. § 460bb, which speak for themselves and are the best evidence of their contents.

30. The allegations in Paragraph 30 purport to characterize 16 U.S.C.§ 460bb, which speaks for itself and is the best evidence of its contents.

31. The allegations in Paragraph 31 purport to characterize Pub. L. No. 95-625, § 317(c), 92 Stat. 3467, 3485 (1978), which speaks for itself and is the best evidence of its contents.

## FACTUAL BACKGROUND

**History of Point Reyes National Seashore and Northern District of GGNRA**

32. The PRSRA admits the second sentence of Paragraph 32. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32.

33. The PRSRA admits that the Point Reyes area has a rich cultural heritage and that the Coast Miwok people have been culturally affiliated with the Point Reyes area for many years. The PRSRA denies the remaining allegations in the first sentence. The PRSRA admits the allegations in the second sentence.

34. The PRSRA admits that ranch properties on the Seashore were purchased by the United States in the 1970s. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34, and thus denies the same.

35. The allegations in Paragraph 35 purport to characterize the 1980 General Management Plan for the Point Reyes National Seashore, which speaks for itself and is the best evidence of its contents.

36-37. The allegations in Paragraphs 36-37 appear to purport to characterize the 2021 ROD /GMPA for Point Reyes National Seashore, which speak for themselves and are the best evidence of their contents.

38. The allegations in Paragraph 38 and the map accompanying Paragraph 38 purport to depict the location of ranching allotments on public lands managed by NPS on the Seashore; the PRSRA admits that the map depicts the location of 31 ranch allotments and two life-estates in the Seashore and the north district of the GGNRA and that these allotments are located on approximately 28,000 acres of land managed by NPS. As to the any remaining allegations in Paragraph 38, the PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations and accompanying map, and therefore denies same.

**Natural Resources and Public Uses of the National Seashore and GGNRA**

39. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, and thus denies the same.

40. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40, and thus denies the same.

41. Admits that the Seashore provides habitat for a rich array of wildlife. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41, and thus denies the same.

42. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 42, and thus denies the same. The second and third sentences of Paragraph 42 purport to characterize Pub. L. No. 94-389, 90 Stat. 1189 (1976), which speaks for itself and is the best evidence of its contents.

43. The PRSRA admits that there are three herds of tule elk on the Seashore that are known as the Drakes Beach herd, the Limantour herd and the Tomales Point herd; and that the Tomales Point herd is intended to be confined to a 2,600-acre elk reserve on Tomales Point that is bounded by a fence. The PRSRA denies the remaining allegations in this paragraph.

44. The PRSRA admits that the north district of GGNRA is approximately 15,000 acres and that Lagunitas Creek and Olema Creek drain to Tomales Bay. The PRSRA denies the remaining allegations in this paragraph.

**The Harmful Impacts of Ranching on Natural Resources on these Public Lands**

45. The PRSRA denies the allegations in Paragraph 45.

46. The PRSRA admits that cattle grazing is authorized on the Seashore and GGNRA. The PRSRA denies the remaining allegations in Paragraph 46.

47. The PRSRA denies the allegations in Paragraph 47.

48. The PRSRA denies the allegations in the first and fourth sentences of Paragraph 48. The PRSRA admits the allegations in the second sentence of Paragraph 48. With respect to the third sentence of Paragraph 48, it appears Plaintiffs' rely on unknown documents and/or conclusions of the National Marine Fisheries Service ("NMFS"), likely including the March 18, 2021 Biological Opinion or its characterization in the ROD and/or GMPA/EIS; those documents speak for themselves and are the best evidence of their contents.

49. The PRSRA denies the allegations in the first sentence of Paragraph 49. The PRSRA admits that forage production was previously authorized on a limited number of acres. The PRSRA denies the remaining allegations in Paragraph 49.

50. The PRSRA denies the allegations in the first and second sentences of Paragraph 50. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 50, and thus denies same.

51. The PRSRA admits that ranchers use various equipment and infrastructure, including fencing and off-road vehicles, but denies the remaining allegations in Paragraph 51.

52. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 52. As to the third

sentence, the PRSRA admits that dairies may have higher densities of cows than beef ranches but denies the remaining allegations in the third sentence.

53. The PRSRA denies the allegations in the first sentence of Paragraph 53. The PRSRA admits that residences on ranches often use septic systems, that some ranch residences use springs or wells, and that others obtain water from NPS or a local utility. The PRSRA denies any remaining allegations in Paragraph 53.

54. The PRSRA denies the allegations in the first and fifth sentences of Paragraph 54. The PRSRA admits that trucks visit dairies to collect milk, that trucks are sometimes used to spread manure on certain fields, and that trucks sometimes bring hay to ranches. The PRSRA denies any remaining allegations in this paragraph.

55. The PRSRA denies the allegations in Paragraph 55.

56. The PRSRA denies the allegations in the first sentence of Paragraph 56. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 56, and thus denies the same.

**NPS's Failure to Timely Revise its 1980 General Management Plan**

57. The PRSRA denies the allegations in Paragraph 57.

58. The PRSRA admits that on February 3, 2000, NPS published a notice of intent in the Federal Register to prepare an environmental impact statement and General Management Plan ("GMP") for the Seashore, including the north district of GGNRA (65 Fed. Reg. 5365), but denies the remaining allegations in the first sentence of Paragraph 58. The PRSRA denies the allegations in the second sentence of Paragraph 58.

59. The PRSRA admits that NPS initiated a National Environmental Policy Act ("NEPA") planning process for a Ranch Comprehensive Management Plan in 2014. The PRSRA denies the remaining allegations in Paragraph 59.

60. The allegations in the first sentence of Paragraph 60 purport to characterize the complaint filed in *Resource Renewal Inst. v. Nat'l Park Serv.* (*RRI v. NPS*), 3:16-cv-00688-SBA (N.D. Cal.). The PRSRA admits that the First Amended Complaint in *RRI v. NPS* challenged the alleged failure of the NPS to timely revise the GMP for the Seashore and the NPS's alleged

failure to authorize ranching without sufficient NEPA compliance, and denies any remaining allegations in the first sentence. The PRSRA admits the allegations of the second and third sentences of Paragraph 60.

**The Listing of the Historic Dairy Districts**

61. The PRSRA admits the allegations in Paragraph 61, but avers that the correct name is the Point Reyes Peninsula Dairy Ranches Historic District.

62. The PRSRA admits that the Point Reyes Peninsula Dairy Ranches Historic District is comprised of 17 ranch areas, but denies the remaining allegations in the first sentence of Paragraph 62. The PRSRA admits the allegations in the second and third sentences.

63. The PRSRA admits the allegations in Paragraph 63.

64. The PRSRA admits that among the reasons the two districts are historically significant is because of their association with the history of dairy ranching in Marin County and because they contain buildings and structures that reflect that history.

65. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of allegations in the first sentence of Paragraph 65, and therefore denies the same. To the extent Plaintiffs characterize the National Register nomination forms for the two historic districts, those documents speak for themselves and are the best evidence of their contents. The PRSRA denies the allegations in the second sentence of Paragraph 65.

66. To the extent Plaintiffs characterize the National Register nomination forms for two historic districts within the Point Reyes area in Paragraph 66, those documents speak for themselves and are the best evidence of their contents. The PRSRA denies any remaining allegations in Paragraph 66.

**NPS's Planning Process and Proposed GMPA**

67. The PRSRA admits that in October, 2017, the NPS issued a newsletter seeking public input on a conceptual range of alternatives for the GMPA/EIS. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 67.

68. The PRSRA admits the allegations in Paragraph 68.

-8-
[PROPOSED] ANSWER                                                          4:22-cv-00145-MMC

69-72. The allegations in Paragraphs 69-72 purport to characterize the draft and final Environmental Impact Statements for the GMPA, which documents speak for themselves and are the best evidence of their contents.

73. The allegations in Paragraph 73 purport to characterize the settlement agreement in *RRI v. NPS*, 3:16-cv-00688-SBA (N.D. Cal.) (ECF No. 143) and the draft or final GMPA/EIS, which documents speak for themselves and are the best evidence of their contents.

74-76. The allegations in Paragraphs 74-76 purport to characterize the draft and final Environmental Impact Statements for the GMPA, which documents speak for themselves and are the best evidence of their contents.

77. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and thus denies the same.

78. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78, and thus denies the same. To the extent Plaintiffs characterize comment letters submitted by Plaintiffs to NPS, those documents speak for themselves and are the best evidence of their contents.

79. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and thus denies the same. To the extent Plaintiffs characterize comment letters submitted by the Environmental Protection Agency ("EPA") and San Francisco Regional Water Quality Control Board ("SF Water Control Board") to NPS, those documents speak for themselves and are the best evidence of their contents.

80. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and thus denies the same.

**The EIS's Incomplete Baseline Discussion and Impact Analysis**

81-88. The allegations in Paragraphs 81-88 purport to characterize the Environmental Impact Statement for the GMPA, which document speaks for itself and is the best evidence of its contents.

89. The first sentence of Paragraph 89 purports to characterize the EIS, which document speaks for itself and is the best evidence of its contents. The PRSRA admits that NPS

has not completed an appraisal process for issuing leases under the GMPA, but denies the remaining allegations in the second and third sentences of Paragraph 89.

90-91. The allegations in Paragraphs 90-91 purport to characterize the EIS for the GMPA, which document speaks for itself and is the best evidence of its contents.

92. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second clauses in the first sentence of Paragraph 92. The remainder of the allegations in Paragraph 92 purport to characterize the EIS for the GMPA, which document speaks for itself and is the best evidence of its contents.

93-96. The allegations in Paragraphs 93-96 purport to characterize the EIS for the GMPA, which document speaks for itself and is the best evidence of its contents.

**Water Quality Issues and Developments**

97. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97.

*Regional Water Board Regulation and Compliance*

98. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.

99. The allegations in Paragraph 99 purport to summarize the contents of the Water Quality Control Plan for the San Francisco Basin ("Basin Plan"), which document speaks for itself and is the best evidence of its contents. The PRSRA denies any remaining allegations in Paragraph 99.

100. The PRSRA admits that the Water Board issued a Conditional Waiver of Waste Discharge Requirements for Grazing Operations in the Tomales Bay Watershed, Order No. R2-2018-0046 ("the Conditional Waiver") in 2018, but the PRSRA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first and second sentences of Paragraph 100, and therefore denies the same. The allegations in the third sentence characterize a Conditional Waiver, which speaks for itself and is the best evidence of its contents.

101. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101, and therefore denies the same. To the extent Paragraph 101 purports to characterize the NPS's certifications, those documents speak for themselves and are the best evidence of their contents. Any remaining allegations constitute conclusions of law, to which no response is required and which are therefore denied.

102. The allegations in Paragraph 102 purport to characterize the General Waste Discharge Requirements for Confined Animal Facilities Within the San Francisco Bay Region, Order No. R2-2016-0031 ("CAF Order"), issued by the Water Board, which document speaks for itself and is the best evidence of its contents.

103. The allegations in Paragraph 103 purport to characterize the Conditional Waiver and/or CAF Order, which speak for themselves and are the best evidence of their contents.

*California Coastal Commission*

104. The PRSRA admits that the NPS prepared a Consistency Determination in October 2020 for the California Coastal Commission ("CCC"). The Consistency Determination speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 104 constitute conclusions of law, to which no response is required and which are therefore denied.

105. The allegations in this paragraph purport to characterize the Staff Report issued by the CCC on March 26, 2021. The Report speaks for itself and is the best evidence of its contents. To the extent the allegations are inconsistent with the Report, they are denied.

106. The PRSRA admits that on April 22, 2021, the CCC conditionally concurred with the NPS's Consistency Determination. The remainder of Paragraph 106 purports to characterize the CCC's decision, which speaks for itself and is the best evidence of its contents, as well as specific comments submitted by the public to the CCC, regarding which the PRSRA lacks knowledge or information sufficient to form a belief as to the truth of such allegations and thus denies the same.

*Water quality monitoring*

107-108. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 107-108 and thus denies the same.

*Drought*

109. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 and thus denies the same. To the extent Plaintiffs characterize a document in this Paragraph, that document speaks for itself and is the best evidence of its contents.

110. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110 and thus denies the same.

111. The PRSRA admits that Marin County declared a county-wide drought emergency on May 18, 2021, and that the Marin Municipal Water District reported that the 20-month period between January 1, 2020 and August 1, 2021 had the lowest recorded rainfall for a 20-month period in 140 years. The PRSRA denies any remaining allegations in this paragraph.

112. The PRSRA admits that Robert McClure closed his dairy operation at I Ranch and that Mr. McClure continues to raise heifers on I Ranch under his current lease. The PRSRA denies the remaining allegations in Paragraph 112.

113. The PRSRA admits that several ranchers at the Seashore trucked water to their ranches in 2021. The PRSRA denies the remaining allegations in Paragraph 113.

**Endangered Species Act Consultation**

114. The PRSRA admits that NMFS issued a Biological Opinion ("BiOp") on March 18, 2021. The NMFS BiOp speaks for itself and is the best evidence of its contents. The PRSRA denies any remaining allegations in Paragraph 114.

115. The PRSRA admits that the U.S. Fish and Wildlife Service ("FWS") issued a BiOp on June 4, 2021. The FWS BiOp speaks for itself and is the best evidence of its contents. The PRSRA denies any remaining allegations in Paragraph 115.

**NPS's Record of Decision**

116. The PRSRA admits that the Acting Regional Director, Interior Regions 8, 9, 10 and 12, signed the ROD for the GMPA/EIS on September 13, 2021. The remaining allegations

characterize the contents of the ROD, which speaks for itself and is the best evidence of its contents. The PRSRA denies any remaining allegations in Paragraph 116.

117. The PRSRA admits that the Superintendent of the Seashore signed a document entitled, "Succession Policy for Ranch Operations within the Ranchland Zone for Point Reyes National Seashore and the North District of Golden Gate National Recreation Area," on September 13, 2021. The PRSRA denies any remaining allegations in Paragraph 117.

*Modified Alternative B*

118-123. The allegations in Paragraphs 118-123 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents.

*Primary justifications for the GMPA*

124-25. The allegations in Paragraphs 124-125 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the PRSRA denies the allegations.

126. The allegations in Paragraph 126 purport to characterize the ROD and EIS, which speak for themselves and are the best evidence of their contents. To the extent a response is required, the PRSRA denies the allegations.

127. The allegations in Paragraph 127 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the PRSRA denies the allegations.

128-129. The allegations in Paragraphs 128-129 purport to characterize the ROD and EIS, which speak for themselves and are the best evidence of their contents. To the extent a response is required, the PRSRA denies the allegations.

130. The allegations in Paragraph 130 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the PRSRA denies the allegations.

**NPS's Nonimpairment Determination**

131-137. The allegations in Paragraphs 131-137 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents.

**ROD Implementation**

138. The PRSRA admits the allegations in the first sentence of Paragraph 138. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 138, and therefore denies the same.

139. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139, and therefore denies the same.

140. The PRSRA admits that that issuance of long-term leases could allow ranchers to more easily obtain loans to upgrade ranch infrastructure and provide for business security. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 140.

141. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF POINT REYES ACT AND APA**

142. The PRSRA hereby incorporates by reference its responses to paragraphs 1-141 as though fully set forth herein.

143. The allegations in Paragraph 143 purport to characterize Plaintiffs' first claim for relief, to which to no response is required.

144. The allegations in Paragraph 144 purports to characterize 16 U.S.C. § 459c, 459c-6(a), and 459c-5(a), which statutes speak for themselves and are the best evidence of their contents.

145-147. The allegations in Paragraphs 145-147 constitute conclusions of law, to which no response is required.

148. The allegations in Paragraph 148 purport to characterize the ROD, which speaks for itself and is the best evidence of its contents.

149. The allegations in Paragraph 149 constitute conclusions of law, to which no response is required.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF ORGANIC ACT & REGULATIONS

150. The PRSRA hereby incorporates by reference its responses to paragraphs 1-149 as though fully set forth herein.

151. The allegations in Paragraph 151 purport to characterize Plaintiffs' second claim for relief, to which to no response is required.

152. The allegations in Paragraph 152 purport to characterize 54 U.S.C. § 100101(a) and the 2006 NPS Management Policies, which speak for themselves and are the best evidence of their contents.

153. The allegations of Paragraph 153 purport to characterize 54 U.S.C. § 102101 and the 2006 NPS Management Policies, which speak for themselves and are the best evidence of their contents.

154. The allegations in Paragraph 154 purport to characterize the Park Service Organic Act, which speaks for itself and is the best evidence of its contents.

155. The allegations in Paragraph 155 purport to characterize NPS regulations, which speak for themselves and are the best evidence of their contents.

156. The allegations in Paragraph 156, including subparagraphs A – E, constitute legal conclusions, to which no response is required.

157. The allegations in Paragraph 157 constitute legal conclusions, to which no response is required.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF NATIONAL ENVIRONMENTAL POLICY ACT

158. The PRSRA hereby incorporates by reference its responses to paragraphs 1-157 as though fully set forth herein.

159. The allegations in Paragraph 159 purport to characterize Plaintiffs' third claim for relief, to which to no response is required.

160-162. The allegations in Paragraphs 160-162 purport to characterize NEPA and its implementing regulations, which speak for themselves and require no response.

163. The allegations in Paragraph 163 purport to characterize *Or. Natural Desert Ass'n. v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1120 (9th Cir. 2010).

164. The allegations in Paragraph 164, including subparagraphs A – D, constitute legal conclusions, to which no response is required.

165. The allegations in Paragraph 165 constitute legal conclusions, to which no response is required.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF THE CLEAN WATER ACT

166. The PRSRA hereby incorporates by reference its responses to paragraphs 1-165 as though fully set forth herein.

167. The allegations in Paragraph 167 purport to characterize Plaintiffs' fourth claim for relief, to which to no response is required.

168. The allegations in Paragraph 168 purport to characterize the Clean Water Act ("CWA"), which speaks for itself and requires no response.

169. The allegations in Paragraph 169 purport to characterize the requirements of the Basin Plan, the CAF Order, the Conditional Waiver and other unnamed requirements. These documents speak for themselves and are the best evidence of their contents.

170. The PRSRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 170, and thus denies the same. The PRSRA denies the second sentence of Paragraph 170. The third sentence of Paragraph 170 is too vague and generalized to permit a response and the PRSRA therefore denies the same.

171-174. The allegations in Paragraphs 171-174 constitute legal conclusions, to which no response is required.

## PRAYER FOR RELIEF

The remainder of the complaint constitutes Plaintiff's requested relief, which requires no response and is therefore denied.

## GENERAL DENIAL

To the extent any allegations of the complaint have not been admitted or specifically responded to, the PRSRA denies such allegations.

## AFFIRMATIVE DEFENSES

1. To the extent that Plaintiffs have failed to state a claim on which relief can be granted, any such claims should be dismissed.

2. To the extent that the Court lacks jurisdiction over some or all of Plaintiffs' claims, any such claims should be dismissed.

3. Plaintiffs may lack standing over one of more of their claims.

4. Plaintiffs may have failed to exhaust administrative remedies over one or more of their claims.

5. Plaintiffs' claims are barred to the extent they are not ripe for adjudication.

7. Intervenors currently have insufficient knowledge or information as to whether they are entitled to other, separate affirmative defenses and reserve their right to later assert additional defenses to these and other claims for relief as appropriate.

## CROSS-CLAIMS

1. The PRSRA reserves the right to assert one or more cross-claims against NPS.

WHEREFORE, defendant-intervenors deny that Plaintiffs are entitled to the relief requested, or to any relief whatsoever, and thus request that the Court dismiss Plaintiffs' Complaint, Dkt. No. 1, with prejudice, that judgment be entered in favor of federal defendants and defendant-intervenors, and that the Court order such other relief as it deems necessary.

Respectfully submitted this 20th day of April, 2022.

/s/ Tony Francois
Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:   (415) 402-2700
Facsimile:   (415) 398-5630
Email:       tfrancois@briscoelaw.net

/s/ Caroline Lobdell
Caroline Lobdell, Ore. Bar #021236, *PHV forthcoming*

/s/ Aaron Bruner
Aaron Bruner, Ore. Bar #133113, *PHV forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:   (503) 768-8500
Facsimile:    (503) 222-3255
Email:          clobdell@wrlegal.org
                    abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenor

POINT REYES SEASHORE RANCHERS ASSOCIATION

**CERTIFICATE OF SERVICE**

I, Tony Francois, hereby certify that I, on April 20, 2022, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: April 20, 2022

/s/ Tony Francois
Tony Francois
