Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:    (415) 402-2700
Facsimile:    (415) 398-5630
Email:        tfrancois@briscoelaw.net

Caroline Lobdell, Ore. Bar #021236, *pro hac vice forthcoming*
Aaron Bruner, Ore. Bar #133113, *pro hac vice forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:    (503) 768-8500
Facsimile:    (503) 222-3255
Email:        clobdell@wrlegal.org
              abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenor
POINT REYES SEASHORE RANCHERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, a federal agency,<br><br>Defendant,<br><br>POINT REYES SEASHORE RANCHERS ASSOCIATION,<br><br>Proposed Defendant-Intervenor. | Case Number: 4:22-cv-00145-KAW<br><br>**DECLARATION OF JOLYNN MCCLELLAND** |

I, JOLYNN MCCLELLAND, under threat of penalty of law and pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I make this declaration on behalf of me and my husband, Robert McClelland, in support of proposed intervenors' Motion to Intervene in the above-referenced case. I am competent to testify about the matters set forth herein and am over 18 years of age.

2. I am a member of the Point Reyes Seashore Ranchers Association ("PRSRA") that seeks intervention in this case and I have personal interests at stake, and knowledge concerning, this litigation. Both my and my husband's families come from long lines of West Marin dairy families. I am a fourth-generation dairy farmer operating on the lands of the Point Reyes Peninsula. My great grandparents immigrated to the United States from the Azores. They went on to purchase the historic A & B Ranches in 1919. My grandparents continued to run the B Ranch as a dairy farm, later bringing my parents into the partnership. I grew up on the Historic B Ranch. My brother, Jarrod Mendoza, currently runs an organic dairy there and continues to lease the B Ranch. My grandparents, Joe and Scotty Mendoza, purchased the historic L Ranch in the 1950s. My husband and I took over the L Ranch lease in 2011.

3. My husband, Robert McClelland, and I own and operate the R & J McClelland Dairy as an organic dairy on the historic L Ranch property on the Point Reyes National Seashore ("Seashore"). On the L Ranch we are authorized to stock up to 400 animal heads on average annually. The L Ranch is subject to the National Park Service's ("NPS") General Management Plan Amendment and Record of Decision ("GMPA/ROD") for the Seashore that plaintiffs here seek to declare unlawful. The income derived to our family business from the L Ranch provides an important source of income, livelihood, and economic well-being for our family and our employees. Without the ability to graze our livestock on the Seashore, me and my family, and our family business, would experience significant harm.

4. Our ranch previously operated under five-year special use permits ("SUPs"). We had understood from the federal government that long-term authorizations would be granted. However, as NPS began to develop the Ranch Comprehensive Management Plan, a precursor to the GMPA/ROD process, starting in early 2014, NPS began to authorize grazing only one year at

a time.  In 2017, the U.S. Department of Justice filed a multi-party settlement agreement beginning the GMPA/ROD development process and again authorizing only short-term leases while NPS developed the plan amendment.  These short-term authorizations create great uncertainty in our capital investment decisions, like how much to invest in fence improvements and other capital improvements to benefit ranch operations.  In sum, the short-term authorizations hinder our ability to ensure the stability of our multi-generational family business.  Plaintiffs' lawsuit, among other things, seeks to prevent NPS from issuing longer-term leases pursuant to the GMPA/ROD, exacerbating this uncertainty.

5. We operate with the utmost concern for our natural surroundings and seek to leave the smallest footprint possible.  As part of our commitment to environmental stewardship, we are constantly improving our practices.  We go above and beyond to make sure that we are in compliance with air and water quality standards, and we use sustainable farming practices.  For example, we rotationally graze our cows, follow a comprehensive nutrient management plan, and we make full use of our manure production.  We also follow strict animal care and welfare standards.

6. If we were to get a longer-term lease, we would like to make some capital investments on the Ranch such as putting in a loafing barn for winter housing, and water and fencing development in order to rotationally graze more efficiently.

7. We also take water quality concerns very seriously.  Our farm, along with the other dairies at the Point Reyes National Seashore, have been regulated by the San Francisco Bay Regional Water Quality Control Board since 2003.  Among other things, we are required to provide an annual report to the board providing information on our winterization practices annually before the rainy season begins.  We are also required to notify the board of any changes made throughout the year to improve water quality best-management practices and provide a checklist of rainy season preparation steps.  I have carefully followed the NPS's GMPA/ROD development process and the related evaluation by the California Coastal Commission, which have evaluated management practices related to water quality on the Seashore, and which bear on Plaintiffs' concerns with water quality.

8. As described above, I am personally fully invested in the administration of the public lands of the Point Reyes National Seashore, and know (by way of various community meetings and personal conversations) that other similar situated permittees within the agricultural community of the Seashore share my concerns about the uncertainty to the agricultural businesses, way of life, and homes, that this litigation presents.

9. Like many other lessees/permittees, my husband and I and our respective families have been deeply involved in the tapestry of the Point Reyes area for decades. Both my husband and I (and our children) love the Point Reyes National Seashore and we have lived our whole lives in the area, working, observing the scenery and wildlife, recreating, and enjoying the area. This includes, but is not limited to, hiking, photography, and continued observation and enjoyment of the pastoral nature and history of the Seashore.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated: April 16, 2022

Jolynn McClelland