Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:      (415) 402-2700
Facsimile:      (415) 398-5630
Email:          tfrancois@briscoelaw.net

Caroline Lobdell, Ore. Bar #021236, *pro hac vice forthcoming*
Aaron Bruner, Ore. Bar #133113, *pro hac vice forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:      (503) 768-8500
Facsimile:      (503) 222-3255
Email:          clobdell@wrlegal.org
                abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenor
POINT REYES SEASHORE RANCHERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NATIONAL PARK SERVICE, a federal agency,<br><br>　　　　Defendant,<br><br>POINT REYES SEASHORE RANCHERS ASSOCIATION,<br><br>　　　　Proposed Defendant-Intervenor. | Case Number: 4:22-cv-00145-KAW<br><br>**DECLARATION OF RICHARD GROSSI** |

I, Richard Grossi, under threat of penalty of law and pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.  I make this declaration in support of proposed intervenors' Motion to Intervene in the above-referenced case. I am competent to testify about the matters set forth herein and am over 18 years of age.

2.  I am a member of the Point Reyes Seashore Ranchers Association ("PRSRA") that seeks intervention in this case and I have personal interests at stake, and knowledge concerning, this litigation.

3.  My ancestors first immigrated to the Point Reyes area (now known as the Point Reyes National Seashore, or "Seashore") in 1891 from Switzerland. Upon moving to the United States, my grandfather, Dominico Grossi began his new life in America by working in the dairying business in what is now known as the "Pierce Ranch." In 1938, after working hard and saving every cent possible, my grandfather was able to purchase the "M Ranch" for my father, Domingo Grossi, to start our own family dairy. Today, Grossi Ranch continues as a fifth generation family business and is owned and operated by me, my wife Jackie Grossi, and my daughters and their families. I have been an integral part of our family business since my childhood and plan to spend the remainder of my life on the M Ranch engaged in our family business and to carry forward the agricultural tradition, family business, and desire to pass on our family tradition and way of life to my heirs.

4.  I have lived on what was once my family estate, the M Ranch, for virtually my entire life. Other than the first four years of my life, I have both lived and worked on the M Ranch, and raised my own family there.

5.  The Grossi Ranch was initially engaged in the dairying business from 1939 until the 1970s, when under fear of eminent domain, we felt forced to sell our family land to the Federal government. Upon sale to the government, we were granted a 20-year right of use and occupancy, which has now expired, yet it is my understanding that the purpose of the 1962 legislation was to continue ranching indefinitely on the Seashore. After

-3-

DECLARATION OF RICHARD GROSSI                                        4:22-cv-00145-KAW

expiration of our retained rights, we were operating under five-year special use permits ("SUPs") issued by NPS. However, based on our communications with NPS, we understood that long-term authorizations would be forthcoming in the near future. A statement from U.S. Secretary of the Interior Kan Salazar acknowledged this understanding and laid out the NPS's intention to pursue 20-year leases with the ranches remaining on the Seashore.

6. More recently, we were advised to expect only annual authorizations or letters of intent until completion of the Comprehensive Ranch Management Plan process begun in 2014 and similar short-term "Interim Leases" pursuant to a settlement agreement in *Resource Renewal Institute, et al. v. National Park Serv.*, Case No. 4:16-cv-00688-SBA (N.D. Cal.). These short-term authorizations hinder our ability to qualify for certain grants, some of which would be to fund projects that would provide ecological benefits to the Seashore. Authorizations for cattle ranching and residential use issued only on an annual basis have delayed us from being able to engage in meaningful succession planning. The short-term authorizations also prevent us from stabilizing our family business and allowing us to make informed capital investment decisions, some of which would have environmental benefits to the area.

7. Our family ranching business is, and for generations has always been, the source of income, livelihood, and economic well-being for our family. Without the ability to graze on the Seashore, me and my family, and our family business, would be economically devastated if our grazing and residential authorizations were discontinued.

8. As a multigenerational ranch, we are also deeply invested in the quality of the Seashore's natural resources. My legacy is to leave this ranch in better condition than when I started ranching. I have personally witnessed some of the ecological benefits of grazing that our ranching operation offers the Seashore. Our grazed California Coastal Prairie grasslands support a wide variety of native wildlife and a multitude of birdlife that I, other Seashore ranchers, and many visitors enjoy. Our family has repaired erosion areas, enhanced multiple freshwater sources for both domestic animals and wildlife,

-4-

protected wetland areas, and implemented rotational grazing to enhance habitat for the health of the ecosystem on the Grossi Ranch. Endangered plant species are benefitted by livestock grazing that prevents the native grasslands from being invaded by brush. We have also worked with NPS to keep noxious plants, such as Cape Weed, which is extremely invasive, from taking over the native grasslands. Our family ranch has, and continues to provide, ecological benefits by maintaining the native quality of these grasslands, which benefits both the pastoral scenery and wildlife habitat – two of the significant attributes that led to the establishment of the Seashore.

9.      As described above, I am personally fully invested in the administration of the public lands of the Point Reyes National Seashore (including being a part of a family that has contributed to the quality and nature of the Seashore), and know (by way of various community meetings and personal conversations) that other similarly situated permittees within the agricultural community of the Seashore share my concerns about the uncertainty to the agricultural businesses, way of life, and homes, that this litigation presents.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated: 4-10-22

Richard Grossi

-5-

DECLARATION OF RICHARD GROSSI                              4:22-cv-00145-KAW