Tony Francois, Cal. Bar #184100
BRISCOE IVESTER & BAZEL LLP
235 Montgomery Street, Suite 935
San Francisco, California, 94104
Telephone:   (415) 402-2700
Facsimile:    (415) 398-5630
Email:          tfrancois@briscoelaw.net

Caroline Lobdell, Ore. Bar #021236, *pro hac vice forthcoming*
Aaron Bruner, Ore. Bar #133113, *pro hac vice forthcoming*
WESTERN RESOURCES LEGAL CENTER
9220 SW Barbur Blvd., Suite 119 #327
Portland, Oregon 97219
Telephone:   (503) 768-8500
Facsimile:    (503) 222-3255
Email:          clobdell@wrlegal.org
                    abruner@wrlegal.org

Attorneys for Proposed Defendant-Intervenors
POINT REYES SEASHORE RANCHERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RESOURCE RENEWAL INSTITUTE; CENTER FOR BIOLOGICAL DIVERSITY; and WESTERN WATERSHEDS PROJECT, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL PARK SERVICE, a federal agency, <br><br> Defendant, <br><br> POINT REYES SEASHORE RANCHERS ASSOCIATION, <br><br> Proposed Defendant-Intervenor. | Case Number: 4:22-cv-00145-KAW <br><br> **DECLARATION OF TED MCISAAC** |
|---|---|

I, Ted McIsaac, under threat of penalty of law and pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I make this declaration in support of proposed intervenors' Motion to Intervene in the above-referenced case. I am competent to testify about the matters set forth herein and am over 18 years of age.

2. I am a member of the Point Reyes Seashore Ranchers Association ("PRSRA") that seeks intervention in this case and I have personal interests at stake, and knowledge concerning, this litigation. I was born and raised and have personally resided within the boundaries of the Point Reyes National Seashore ("Seashore") for my entire life (with limited exception of three years, in 1970-1973). In that time, I have been engaged in my family's ranching business throughout my life and currently own and operate the McIsaac Ranch with my wife Rhea McIsaac and children. My family homestead the McIsaac Ranch in 1866 and the family has maintained and depended on the McIsaac Ranch for our livelihood and way of life ever since.

3. The McIsaac Ranch is located in the northern part of the Golden Gate National Recreation Area ("GGRNA"). As such, our ranch land is subject to National Park Service ("NPS") jurisdiction and subject to the General Management Plan Amendment and Record of Decision ("GMPA/ROD") for the Point Reyes National Seashore that is challenged by plaintiffs in this litigation.

4. Our family depends on our family ranching business as our primary source of income, livelihood, family tradition, and economic well-being. Without the ability to graze on the land, me and y family, and our family business, would be economically devastated and our soon-to-be fifth generation family business would cease to exist.

5. Historically, from the time of our homestead until around 1973, our ranch engaged in both dairying and cattle ranching. From around 1973 to present, McIsaac Ranch has been engaged exclusively in cattle ranching.

6. In 1983, and 97 years after my family homesteaded the McIsaac Ranch, our family sold the underlying land to the Federal government under fear of condemnation. When

the government acquired the lands that would become the Seashore, NPS initially granted us a 25-year right of use and occupancy.  Following the expiration of our retained right, NPS continued to lease McIsaac Ranch for agricultural and residential use by way of five-year special use permits ("SUPs").  More recently, NPS has authorized our grazing and residential use via annual letters of authorization, which reflect similar terms and conditions for grazing and residing on the Seashore as our initial retained rights.  While NPS previously advised us that we could expect longer-term authorizations (20 years) in the near future, NPS has continued its practice of issuing short-term authorizations.  Under those short-term leases, it was our understanding, based on conversations with NPS, that changes to the authorizations such as adding the names of our children who plan to succeed my wife and me, would not be considered until NPS finalized its prior (and never completed) Comprehensive Ranch Management Plan process that preceded the current GMPA/ROD process.  NPS similarly agreed, in 2017, to issue only short-term leases as part of a settlement agreement reached in a related lawsuit, *Resource Renewal Institute, et al. v. National Park Serv.*, Case No. 4:16-cv-00688-SBA (N.D. Cal.), until the agency completed the recent GMPA/ROD process.  This situation has caused and causes a tremendous amount of uncertainty about the existence and survivability of our family ranch.

   7.  Short-term annual authorizations paralyze our ability to make informed capital investment decisions (many of which would provide ecological benefits to the Seashore's natural resources) or to engage in meaningful succession planning.

   8.  Our family is very proactive in our efforts of environmental stewardship and we care greatly about the land that supports, and has supported our business for almost 130 years.  In the past 25 to 30 years, we have applied for grants through the Natural Resources Conservation Service ("NRCS") for salmon restoration funds of approximately $500,000.  Projects have included creating riparian waterways, excluding cattle from all annual streams, fencing off sensitive habitats, developing springs, reseeding pastures, and reducing sediment to streams using erosion control.  The short-term authorizations of residential and agricultural use hinder our continued ability to quality for similar NRCS grants, which would be of a similar nature to those above and which would provide ecological benefits to the Seashore.  Our family ranch has,

-3-

DECLARATION OF TED MCISAAC               4:22-cv-00145-KAW

and continues to provide, ecological benefits by maintaining the native nature of the pastures, thereby cultivating and maintaining wildlife habitat and pastoral scenery – two of the significant attributes that lead to the establishment of the Seashore. In 2008, our family ranch received an award of recognition from the Marin Resource Conservation District for our projects for conserving and improving natural resources.

9. As described above, I am personally fully invested in the administration of the public lands of the Point Reyes National Seashore (including being a part of a family that has contributed to the quality and nature of the Seashore), and know (by way of various community meetings and personal conversations) that other similarly situated permittees within the agricultural community of the Seashore share my concerns about the uncertainty to the agricultural businesses, way of life, and homes, that this litigation presents.

10. Kevin Lunny and I founded the PRSRA approximately 20 years ago, and he and I continually served as the chair and co-chair from the association's inception until the Spring of 2016. In 2004, PRSRA received the Marin Economic Commission's Award for Excellence in Agricultural Viability. I also served as associate director with the Marin Resource Conservation District for over 20 years. I currently sit on the Farm Service Agency county committee for Marin and Sonoma Counties.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Dated: 3/31/22

_____
Ted McIsaac